UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

ANTHONY THOMPSON,

                Plaintiff,

  -v-                                                      No. 23-CV-2212-LTS

THE PORT AUTHORITY OF NEW YORK
AND NEW JERSEY, PORT AUTHORITY
POLICE LIEUTENANT BRYANT
MAYNARD, and PORT AUTHORITY POLICE
OFFICERS JOHN/JANE DOES NUMBERS 1-
10,

                Defendants.

-------------------------------------------------------------X

<u>MEMORANDUM ORDER</u>

        Anthony Thompson ("Mr. Thompson" or "Plaintiff") brings this action against the Port Authority of New York and New Jersey (the "Port Authority"), Port Authority Police Lieutenant Bryant Maynard ("Lt. Maynard"), and ten unnamed Port Authority police officers (the "John/Jane Doe Defendants" and, together, the "Defendants"). The sixteen causes of action in this case relate to Mr. Thompson's arrest on April 23, 2022. (<u>See</u> docket entry no. 1-1 (the "Complaint").) This Court has subject matter jurisdiction of Mr. Thompson's federal claims pursuant to 28 U.S.C. section 1331 and supplemental jurisdiction of his state claims under 28 U.S.C. section 1367.

        This case is before the Court on Defendants' motion for summary judgment (docket entry no. 22 ("Motion for Summary Judgment")). The Court has carefully considered the parties' submissions in connection with the instant motions. For the following reasons, Defendants' Motion for Summary Judgment is granted in its entirety.

BACKGROUND

The following facts are undisputed unless otherwise indicated.[1]

On September 16, 2018, at the World Trade Center Port Authority Trans-Hudson ("PATH") station, a Port Authority police officer issued a summons for fare evasion to Anthony Thompson.[2]  (Def. 56.1 St. ¶ 13; Pl. 56.1 Resp. ¶ 13.)  Because Mr. Thompson failed to appear for the return date listed on the summons, a warrant (the "Warrant") was issued for his arrest on December 5, 2018.  (Def. 56.1 St. ¶¶ 19-21; Pl. 56.1 Resp. ¶¶ 19-21.)  The Warrant listed the address and date of birth shown on Mr. Thompson's driver's license; a physical description of Mr. Thompson; and "the name of the issuing court, the date of issuance of the warrant, the name or title of the offense charged, the name of the defendant to be arrested (Anthony Thompson), the police officers to whom the warrant is addressed, and a direction to arrest and bring the defendant to the issuing court."  (See Def. 56.1 St. ¶¶ 22-25; Pl. 56.1 Resp. ¶¶ 22-25.)

Mr. Thompson began working as a ramp agent for Envoy American Airlines at John. F. Kennedy ("JFK") International Airport in 2021.  (Thompson Dep. 23:14-20.)  On the evening of April 23, 2022, Mr. Thompson was operating an aircraft tug when he was involved in a motor vehicle accident (the "Accident") near Terminal 8/Gate 44 at JFK Airport.  (Def. 56.1 St. ¶ 26; Pl. 56.1 Resp. ¶ 26.)  The Accident "occurred 'ramp side' in a restricted non-public area of JFK Airport."  (Def. 56.1 St. ¶ 28; Pl. 56.1 Resp. ¶ 28.)

---

[1]   Facts characterized as undisputed are identified as such in the parties' statements pursuant to S.D.N.Y. Local Civil Rule 56.1 or drawn from evidence as to which there has been no contrary, non-conclusory factual proffer.  Citations to the parties' respective Local Civil Rule 56.1 Statements (docket entry nos. 25 ("Def. 56.1 St.") and 30 ("Pl. 56.1 Resp.")) incorporate by reference the parties' citations to the underlying evidentiary submissions.

[2]   Mr. Thompson testified at his deposition that he lost his wallet, which contained his ID, in August 2018.  (Docket entry no. 23-3 ("Thompson Dep.") at 16:21-17:12.)

Several Port Authority police officers, including Lt. Maynard, responded to the scene of the Accident. (Def. 56.1 St. ¶ 29; Pl. 56.1 Resp. ¶ 29.) Mr. Thompson was asked to provide his driver's license to one of the police officers, whose check discovered the Warrant for Mr. Thompson's arrest. (Def. 56.1 St. ¶¶ 31-32.) Defendants maintain that the Warrant "was discovered and confirmed by the Port Authority's Central Police Desk" and "then re-confirmed by the New York City Police Department Warrants Division." (Def. 56.1 St. ¶¶ 32-33.) Mr. Thompson, in contrast, disputes "that the warrant was 'confirmed by the Port Authority's Central Police desk'" on the grounds that (1) "Plaintiff has consistently maintained, and his supervisor confirmed, that he has passed multiple background checks as a necessary precondition to employment at JFK Airport and there cannot have been a valid warrant[,]" and (2) later in the evening, a court official "report[ed] that the clerk had dismissed the case." (Pl. 56.1 Resp. ¶¶ 32-33.) However, there is no dispute that the Warrant matches Mr. Thompson's exact name, address, date of birth, and physical description. (Def. 56.1 St. ¶ 34; Pl. 56.1 Resp. ¶ 34.)

Pursuant to the Warrant, Mr. Thompson was placed into handcuffs and taken into custody. (Def. 56.1 St ¶ 35; Pl. 56.1. St. ¶ 35.) Mr. Thompson testified at his deposition that, once he was placed into handcuffs, the officers conducted a search (the "Search"); the Search lasted for ten to fifteen minutes and consisted of the officers asking him to take off his jewelry, belt, and shoelaces; remove personal items from his pockets; and adjust his clothing (i.e., lift his shirt and pull down his pants to expose the shorts he was wearing underneath) to comply with a visual search. (Thompson Dep. at 39:10-40-15.) He further testified that he was "not strip searched." [3] (Id. at 39:18.) The Search was conducted at the site of the Accident—"'ramp side'

---

[3]      Mr. Thompson's characterization of the Search in his Local Civil Rule 56.1 Statement differs from his deposition testimony. In his Local Civil Rule 56.1 Statement, Mr. Thompson alleges that "[t]he Port Authority officers at the scene told Mr. Thompson to

in a restricted non-public area of the JFK airport." (Def. 56.1 St. ¶ 28; Pl. 56.1 Resp. ¶ 28.) Plaintiff proffers that the Search "was deeply humiliating for Mr. Thompson, who felt violated" because it was conducted in front of his supervisor and airport customers, who could see the site of the Accident through the windows of the airport. (Pl. 56.1 Resp. ¶¶ 44, 46.)

After the Search, Mr. Thompson was transported directly from the Accident location to Manhattan Central Booking. (Def. 56.1 St. ¶ 36; Pl. 56.1 Resp. ¶ 36.) Plaintiff proffers that he "was put into tight handcuffs for the duration of the car ride into Manhattan to Central Booking, and the Port Authority officers refused to loosen them despite Mr. Thompson's requests to do so." (Pl. 56.1 St. ¶ 50.) Mr. Thompson was released from Manhattan Central Booking shortly after his arrival. (See Def. 56.1 St. ¶ 37; Pl. 56.1 Resp. ¶ 37.) Mr. Thompson notes that he was released after "the court officer near [his] cell [learned] that the clerk had dismissed Mr. Thompson's warrant and case." (Pl. 56.1 Resp. ¶ 51.) Indeed, "the court officer in the cells told the Port Authority officer that the Port Authority should have called them first, and they could have searched for Mr. Thompson in the system and clarified the situation, instead of arresting Mr. Thompson and ferrying him all the way to Manhattan." (Id. ¶ 52.)

Mr. Thompson proffers that "[t]he wrist marks from the handcuffs, and corresponding pain, redness, swelling, and tightness, lasted for days." (Pl. 56.1 Resp. ¶ 53.) However, Mr. Thompson neither sought medical treatment nor took any medication for his wrist injuries, which resolved in a couple days. (Def. 56.1 St ¶¶ 39-40; Pl. 56.1 Resp. ¶¶ 39-40.)

---

remove his clothing and strip-searched him in front of his supervisor and airport customers," and that, "[a]s part of the search, Mr. Thompson was made to pull his pants down so as to allow the officers to check inside his shorts, and to remove his shirt." (Pl. 56.1 ¶¶ 44-45.)

DISCUSSION

Summary judgment is warranted when there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is considered material when it "might affect the outcome of the suit under the governing law," and a dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The Court views the evidence in the light most favorable to the nonmoving party, drawing all reasonable inferences in that party's favor. Ashley v. City of N.Y., 992 F.3d 128, 136 (2d Cir. 2021). The nonmoving party may not rely solely on "conclusory allegations or unsubstantiated speculation" to survive summary judgment but "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." Brown v. Eli Lilly & Co., 654 F.3d 347, 358 (2d Cir. 2011) (citations omitted).

Abandoned Claims (Counts II-III, V-VI, VIII-XVI)

Where a plaintiff fails to respond to arguments for granting summary judgment on a claim, courts in this Circuit deem those claims abandoned. See Camarda v. Selover, 673 F. App'x 26, 30 (2d Cir. 2016) (upholding inference of abandonment when party moved for summary judgment on all claims and non-moving party opposed motion with respect to only one claim); Di Giovanna v. Beth Israel Med. Ctr., 651 F. Supp. 2d 193, 208 (S.D.N.Y. 2009) (concluding that plaintiff abandoned claim where summary judgment "opposition papers do not even mention the claim").

Here, Defendants moved for summary judgment on all sixteen causes of action asserted in the Complaint. (Docket entry no. 24 ("Def. Mem.") at 1-2.) Defendants also argue that the John/Jane Doe Defendants must be dismissed from the case at this stage. (Def. Mem. at

14 ("Discovery into the underlying arrest is complete and Plaintiff cannot maintain any claims he purports to assert against unnamed John/Jane Doe defendants.").) Mr. Thompson, however, only opposes summary judgment "as to the claims of unreasonable search and seizure and excessive use of force." (Docket entry no. 29 ("Pl. Mem.") at 13.) His papers make no mention of the John/Jane Doe Defendants. Because Mr. Thompson's "opposition papers do not even mention" the other claims asserted in his Complaint or the John/Jane Doe Defendants, the Court concludes that he abandoned all claims except for those related to unreasonable search (Counts I and IV) and excessive force (Count VII) against the Port Authority and Lt. Maynard. Defendants' uncontradicted proffers and arguments with respect to the abandoned claims are sufficient to warrant judgment dismissing those claims. Therefore, summary judgment is granted as to Counts II-III, V-VI, and VII-XVI.

Unreasonable Search (Counts I and IV)

Mr. Thompson brings claims for an unreasonable search under the Fourth and Fourteenth Amendments of the United States Constitution (Count I) and under the New York State Constitution (Count IV). The same standard governs both counts. Bancroft v. City of Mount Vernon, 672 F. Supp. 2d 391, 401 n.4 (S.D.N.Y. 2009) ("The standard for what constitutes a constitutionally reasonable search is the same under federal and New York State law.")

"Generally, officers are justified in conducting searches incident to a lawful arrest in order to ensure the safety of officers as well as to prevent the destruction of evidence." Moore v. Hearle, 639 F. Supp. 2d 352, 356 (S.D.N.Y. 2009). "Where an officer makes an arrest pursuant to a warrant it is presumed to be reasonable and to have been issued on probable cause." Bah v. Apple Inc., No. 19-CV-3539-PKC, 2021 WL 4084500, at *9 (S.D.N.Y. Sept. 8, 2021).

Under New York Law, "[a]n arrest warrant is valid on its face when it follows the statutory form contained in [New York Criminal Procedure Law ("CPL")] § 120.10." Okoroafor v. City of N.Y., No. 07-CV-9387-DAB, 2013 WL 5462284, at *3 (S.D.N.Y. Sept. 25, 2013) (citation omitted).[4]

Here, the record demonstrates that Mr. Thompson was arrested pursuant to the Warrant, which "matche[d] Plaintiff's exact name, address, date of birth and physical description." (Def. 56.1 St. ¶ 34; Pl. 56.1 Resp. ¶ 34.) While Mr. Thompson insists that there is a dispute of fact regarding "the confirmation by the NYPD of this warrant" because "he has passed multiple background checks as a necessary precondition to employment at JFK Airport" and because the case against him was dismissed (Pl. 56.1 Resp. ¶ 33), he does not argue that the Warrant did not match his identifying information or otherwise failed to follow the statutory form prescribed by New York CPL section 120.10. Nor does Mr. Thompson argue that there was no probable cause to arrest him. Therefore, there is no genuine dispute of material fact that he was lawfully arrested.

Because there is no dispute that Mr. Thompson was searched incident to a lawful arrest, the Court must next assess the reasonableness of the Search. While the Supreme Court has cautioned that "[t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application[,]" the Court directed lower courts to "consider the

---

[4] "A warrant of arrest must be subscribed by the issuing judge and must state or contain (a) the name of the issuing court, and (b) the date of issuance of the warrant, and (c) the name or title of an offense charged in the underlying accusatory instrument, and (d) the name of the defendant to be arrested or, if such be unknown, any name or description by which he can be identified with reasonable certainty, and (e) the police officer or officers to whom the warrant is addressed, and (f) a direction that such officer arrest the defendant and bring him before the issuing court." N.Y. CRIM. PROC. L. § 1210.10(2).

scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." Bell v. Wolfish, 441 U.S. 520, 559 (1979). The Court considers each of the Bell factors in turn:

First, the Court concludes that the scope of the particular intrusion was reasonably limited. In his deposition, Mr. Thompson testified that the Search lasted for ten to fifteen minutes and consisted of the officers asking him to take off his jewelry, belt, and shoelaces; remove personal items from his pockets; and adjust his clothing (i.e., lift his shirt and pull down his pants to expose the shorts he was wearing underneath) to comply with a visual search. (Thompson Dep. at 39:10-40-15.) The undisputed facts in the record thus demonstrate that the search was reasonable and limited to checking for weapons or contraband. Mr. Thompson's repeated characterization of this process as a "strip search" does not create a dispute of material fact. "The term 'strip search' is used generally to describe any inspection of the naked body[,]" and there is no evidence that Mr. Thompson's unclothed body was ever exposed. Kelsey v. Cnty. of Schoharie, 567 F.3d 54, 62 (2d Cir. 2009). Indeed, Mr. Thompson testified at his deposition that he was "not strip searched." (Thompson Dep. at 39:18.)

Second, the record indicates that the search was conducted in a reasonable manner. A search "conducted in a professional manner is more reasonable than one that is not." Harris v. Miller, 818 F.3d 49, 59-60 (2d Cir. 2016). Here, there is no evidence in the record that the search was conducted in an unprofessional or otherwise unreasonable manner.

Third, the initiation of the search was justified to the extent that "officers are justified in conducting searches incident to a lawful arrest in order to ensure the safety of officers . . . ." Moore, 639 F. Supp. 2d at 356. The fact that the Warrant was issued following a minor, non-violent offense—fare evasion—does not undermine this justification. See Joyner v. City of

Mount Vernon, No. 09-CV-8982-VB, 2011 WL 3296083, at *4 (S.D.N.Y. July 25, 2011) (rejecting plaintiff's argument that a "police officer cannot conduct a search during the arrest for a misdemeanor or traffic violation").

Fourth, the Search was conducted in a reasonable location.  There is no dispute that the Search was conducted at the site of the Accident—"'ramp side' in a restricted non-public area of the JFK airport."  (Def. 56.1 St. ¶ 28; Pl. 56.1 Resp. ¶ 28.)  Mr. Thompson proffers that the Search was "humiliating" and that he "felt violated" because he was searched "in front of his supervisor and airport customers, who could see the events from the glass windows above[.]"  (Pl. 56.1 Resp. ¶¶ 44, 46.)  While the Court is sympathetic to Mr. Thompson's embarrassment about being searched by police and arrested at his place of work, New York courts have consistently found similarly limited searches to be reasonable in public places.  See, e.g., People v. Jones, 3 Misc.3d 481, 485–86 (N.Y. Sup.Ct., Bronx Cnty. 2004) (concluding that pulling back individual's pants to inspect the inside of the pants in public was reasonable).  This conclusion is bolstered by the fact that the Search was completed in "a relatively secluded area with little traffic."  United States v. Peters, 843 Fed. Appx. 369, 371 (2d. Cir. 2021) (holding that a more invasive "reach-in search" was reasonable under the circumstances).

Based on the undisputed facts in the record, the Court concludes that all four Bell factors support the conclusion that the Search was reasonable under the circumstances.  The Court therefore grants Defendants' motion with respect to Counts I and IV.

Excessive Force (Count VII)

Mr. Thompson brings a claim of excessive force under the Fourth and Fourteenth Amendments of the United States Constitution (Count VII) based on tight handcuffing.  Courts in this Circuit "apply a separate standard to claims for excessive force in the use of handcuffs."

Sachs v. Cantwell, No. 10-CV-1663-JPO, 2012 WL 3822220, at *14 (S.D.N.Y. 9 Sept. 4, 2012). Courts "frequently consider (1) whether the handcuffs were unreasonably tight; (2) whether the defendants ignored the plaintiff's pleas that the handcuffs were too tight; and (3) the degree of injury to the wrists." Grytsyk v. Morales, 527 F.Supp.3d 639, 654 (S.D.N.Y. 2021) (citation omitted). "The injury requirement is particularly important," Ali v. Ramos, No. 16-CV-1994-ALC, 2020 WL 5817009, at *5 (S.D.N.Y. Sept. 30, 2020) (citation omitted), and "[i]t is well established in this Circuit that claims of excessive force are not established by allegations that overly tight handcuffs caused minor, temporary injuries" such as discomfort, swelling, or redness, Grytsyk, 527 F.Supp.3d at 654 (citation omitted). Instead, "[c]ourts have typically found handcuffing that resulted in scarring or nerve damage to satisfy the injury requirement of an excessive force claim." Gonzalez v. Bronx Cnty. Hall of Just. Ct. Officer Mark Hirschman Shield 7421, No. 15-CV-810-GHW, 2017 WL 435829, at *4 (S.D.N.Y. Jan. 31, 2017).

   Here, Mr. Thompson's excessive force claim cannot survive summary judgment because the record demonstrates that the handcuffing only caused him minor, temporary injuries. There is no dispute that Mr. Thompson "never sought medical treatment for his alleged wrist injuries from the handcuffs" and "never took any Advil, Tylenol or other medication for his alleged wrist injuries which resolved in a couple of days." (Def. 56.1 St. ¶¶ 39-40; Pl. 56.1 Resp. ¶¶ 39-40.) It is well-established that Mr. Thompson's injuries—"wrist marks from the handcuffs, and corresponding pain, redness, swelling, and tightness [that] lasted for days" (Pl. 56.1 Resp. ¶ 53) —cannot sustain a viable excessive force claim for tight handcuffing. See, e.g. Selvaggio v. Patterson, 93 F. Supp. 3d 54, 74-76 (E.D.N.Y. 2015) (collecting cases discussing "de minimis" injuries from tight handcuffing).

   Accordingly, the Court grants summary judgment on Count VII.

CONCLUSION

Defendants' Motion for Summary Judgment is granted in its entirety. This Memorandum Order resolves docket entry number 22. The Clerk of Court is respectfully requested to enter judgment dismissing Mr. Thompson's complaint and close this case.

SO ORDERED.

Dated: New York, New York
September 10, 2024

    /s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
Chief United States District Judge